FILED

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2020 JAN 14 PM 2: 48

CLERK U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                          Case No.: 8:18-bk-09146-CPM
                                                                Chapter 13

BRIAN MARK GRAFTON

    Debtor

_____/

# DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE FOR VIOLATION OF AUTOMATIC STAY BY RHC MASTER ASSOCIATION, INC

Brian Mark Grafton, the "**Debtor**", respectfully comes before this court to request the court issue an order to show cause as to why RHC Master Association, Inc. (the "**Association**"), together with it's attorney, Appleton Reiss, has taken actions and filed motions which violate the automatic stay afforded debtors in US bankruptcy cases. The Association has willfully, and repeatedly violated the automatic stay, and continues on a path with the purposeful intent of continuing to violate the automatic stay through deceptive, excessive, and additional court actions, as well as abuse of the Debtor.

In support of this motion, Debtor states the following:

1.  RHC Master Association, Inc, a secured creditor in this bankruptcy proceeding, has repeatedly filed motions for relief from stay in this proceeding. To date, the Association has filed three motions for relief from stay, with each motion alleging that the debtor has abused the bankruptcy court for filing two bankruptcies. Also in each filing, the Association argues that it should not have to wait for payment of the debt owed. But this is exactly why the bankruptcy court and laws exist.

2. On May 14, 2019, the Association filed a motion for relief from stay, although the filing was actually for an entity called "Royal Hills Homeowners Association", and a hearing was scheduled. Debtor was not notified of this hearing, because he does not live in the "Royal Hills" community which, presumably, is where notification was sent.

3. Debtor contends the May 14 filing was filed by Association purposely in this manner, and was a willful and blatant attempt to avoid the automatic stay. It was also just the first of many attempts at avoiding the stay. Association's counsel stated, in a hearing before this court on September 24, 2019, that the filing was a simple clerical error, or something similar to a cut and paste oversight.

4. On July 12, 2019 an order from this court was entered granting "Royal Hills Homeowner's Association" relief from the automatic stay, attached as "**Exhibit A**". This order very clearly states "Royal Hills Homeowner's Association" is granted relief from stay, in no less than three locations throughout the order. "RHC Master Association" appears nowhere in the entire order.

5. On July 24, 2019 the Association went before the county court, and filed a motion to reset sale of Debtor's home ("**Exhibit B**"), citing the July 12 order granting "Royal Hills Homeowner's Association" relief from stay. The Debtor's home was set for sale at auction on September 13, 2019. The Association clearly, and carefully, inserted all relevant information into the "proper" locations for the order. "RHC Master Association" is at the top of the motion. While in Item 4, the Association must reference the bankruptcy court order granting relief, and carefully places "Royal Hills Homeowners Association" in that location, while including a copy of the order from the bankruptcy court. This is blatant disregard for the automatic stay by the Association, and a carefully crafted, willful deception of the county court.

6. The Association's actions through July 24 represent a willful disregard for the automatic stay provided by the bankruptcy court. There is no argument for accidents, that would cover the three filings outlined to this point. The Association has willfully, knowingly, and carefully crafted it's attempts to avoid the automatic stay. The

Association has deceived, or attempted to deceive, two courts as well as the Debtor. They have also engaged in a deceitful pattern that would allow them to get away with it, either through Debtor being unwilling, unknowing, or unable to defend all of these actions. The fact that the Association's counsel, perhaps, crafted the July 12 relief from stay order, for this court, moves these actions further along the scale of disregard for the Debtor, bankruptcy laws, the county court, as well as this bankruptcy court.

7. On August 14, 2019 Debtor filed a motion to re-instate the automatic stay, with this court, and a hearing was set for September 24, 2019.

8. On August 16, 2019 Debtor filed a motion to cancel sale with the county court. The county court granted this motion, and the sale was cancelled.

9. On August 29, 2019 the Association once again filed a motion for relief from stay with this court. This filing was done before the hearing on the previous motion had even been heard, on Debtor's motion to re-instate the stay. That hearing was scheduled for October 19.

10. On September 19, 2019, Debtor filed a motion opposing the relief from stay, sought by the Association in the August 29 filing.

11. Also on September 19, as soon as the Association saw the motion would be opposed, they sent a letter to Debtor, alleging a dispute and requesting mediation ("**Exhibit C**"). This is yet another attempt to avoid the automatic stay, by creating a dispute and then suing Debtor in civil court, thereby creating post-petition debts and attempting to foreclose on Debtor's home in this manner. Each and every issue outlined in this letter is an ongoing issue, that all homeowners in the community must deal with.

12. The Association has governing documents. These documents allow for notifying residents of issues with their homes, via "Out-of-Compliance" letters. These letters are to come from, and be directed by, the managing association. The documents do not, however, allow for attorneys to direct any out of compliance issues. The Debtor received one such letter, in the six months prior to the September 19 allegation letter from the attorneys. This issue was dealt with timely by Debtor, and the situation resolved. There was no dispute.

13. Since the September 19 letter from Association's counsel, the Debtor has received no less than nine (9) Out of Compliance letters. This is clearly another attempt around the automatic stay, and another predatory attempt to foreclose and collect their payment without the need to wait for bankruptcy payments. The Association, and it's lawyers, have stated a "dispute" first, and now are going about the task of creating this dispute. Again, there was only one normal violation prior to this letter.

14. At the September 24 hearing, the automatic stay was re-instated, with regards to the "Royal Hills" motions.

15. This court then ruled, in a hearing on October 19, 2019, that Debtor was within his rights in filing the second bankruptcy. The Association's motion for relief from stay was denied.

16. The Association has clearly engaged in a long pattern of deceit and disregard for the automatic stay. In a vacuum, the first filing could possibly be dismissed as accidental. The second, and third filings, clearly demonstrate there was no accident at any time, including the initial filing, and the goal of the Association is to avoid the stay, and collect its money through any means necessary. The Association is showing an unnatural obsession with foreclosing on Debtor's home, especially in light of the fact that the Chapter 13 plan would afford payback of the entire debt. This type of predatory behavior toward a Debtor should not be allowed to stand. This total disregard for not one, but two different courts should also not be tolerated.

WHEREFORE, Debtor respectfully requests the Court to issue an order to show cause, and compel the Association, and its attorneys if necessary, to explain their repeated violations of the automatic stay, as outlined in this motion.

Brian M Grafton

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the chapter 13 trustee, Jon Waage (by ECF), and via U.S. Mail to the offices of Appleton Reiss, Attorneys at Law, 501 E Kennedy Blvd, Suite 802, Tampa, FL 33602, this 17 14 day of ~~December, 2019~~ JANUARY, 2020.

Brian M Grafton

ORDERED.

Dated: July 12, 2019

*Catherine McEwen*
Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                         Case No. 8:18-bk-09146-CPM
                                               Chapter 13
BRIAN MARK GRAFTON,

  Debtor.
_____/

## ORDER GRANTING MOTION OF ROYAL HILLS HOMEOWNERS ASSOCIATION, INC. FOR RELIEF FROM STAY

THIS MATTER came on for hearing on July 2, 2019, upon the Royal Hills Homeowners Association, Inc.'s Motion for Relief from Stay and for Prospective Relief (Doc. No. 43) (the "**Motion**") filed on May 14, 2019. The Debtor did not appear and no objection to the Motion was filed. Having reviewed the motion, heard argument from counsel the Association, and being otherwise informed in the premises, the Court determines that the Motion should be granted. Accordingly, it is,



68H0997.DOCX

**ORDERED:**

1. The Motion is **GRANTED.**

2. The automatic stay, by reason of 11 U.S.C. § 362(d), is terminated as to Royal Hills Homeowners Association, Inc.'s interest in the real property with the street address of 5842 Bent Grass Dr., Valrico, Florida 33596 (the "**Property**") and more particularly described as follows:

> Lot 3, Block 30, RIVERHILLS COUNTRY CLUB, Parcel 19, according to the map or plat thereof, as recorded in Plat Book 82, Page 36, of the Public Records of Hillsborough County, Florida.

3. The relief granted herein permits the Association to seek and obtain *in rem* relief against the Property and demand that any tenant occupying the Property pay the Association the subsequent rental payments until all monetary obligation due to the Association are paid in full. The Association shall not obtain *in personam* relief against the Debtor without further order of this Court.

4. The Association's request that the Court grant it *in rem* prospective stay relief as to the Property, providing that such stay relief shall apply to all future bankruptcies which purport to involve the Property filed by the Debtor or any person or entity filing or claiming an interest in the Property, by, through, or under the Debtor; permitting the state court clerk to disregard any and all future bankruptcy filing which are intended to stop or delay a foreclosure sale of the

Property for two years from the entry of the order granting *in rem* prospective stay relief is GRANTED.

5. The fourteen (14) day stay of this Order is waived so that the Association can pursue its *in rem* remedies without further delay.

6. The Association is awarded $450 in attorneys' fees and $181 in costs for the prosecution of the Motion and the award may be included in the attorney's fees awarded by a state court judge in a foreclosure judgment entered in favor of the Association with respect to the Property.

7. **<u>ALL STATE COURT JUDGES AND CLERKS ARE NOTIFIED</u>: THE FILING OF A BANKRUPTCY PETITION BY THE DEBTOR OR ANY PERSON OR ENTITY FILING OR CLAIMING AN INTEREST BY THROUGH OR UNDER THE DEBTOR PRIOR TO JULY 2, 2021, WILL NOT CAUSE THE AUTOMATIC STAY TO BECOME OPERATIVE AND WILL NOT, THEREFORE, PROVIDE GROUNDS TO STOP ANY SCHEDULED FORECLOSURE SALE OR OTHER COURT PROCEEDING WITH RESPECT TO THE PROPERTY DESCRIBED IN PARAGRAPH 2 OF THIS ORDER.**

Attorney Karen S. Cox is directed to serve a copy of this order on interested parties who are non-CM/ECF users, the General Counsel for the Hillsborough County Clerk of Courts, and the Chief Judge for the Thirteenth Judicial Circuit, Hillsborough County, and to file a proof of service within 3 days of entry of the order.

Filing # 93053376 E-Filed 07/24/2019 09:50:15 AM

## IN THE COUNTY COURT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## COUNTY CIVIL DIVISION, CASE NO.: 16-CC-11437

RHC MASTER ASSOCIATION, INC.,

    Plaintiff,

vs.

BRIAN M. GRAFTON AND SYLVIA GRAFTON,

    Defendants.
_____/

### MOTION TO RESET FORECLOSURE SALE

COMES NOW Plaintiff, RHC MASTER ASSOCIATION, INC., pursuant to the Florida Rules of Civil Procedure and moves this Honorable Court reset the October 26, 2018 foreclosure sale in the case herein, and in support thereof states as follows:

1. On September 4, 2018, the Court entered an Amended Final Judgment of Foreclosure in the case herein, scheduling a foreclosure sale for October 26, 2018 at 10:00 a.m. (see attached **Exhibit "A"**).

2. On October 26, 2018, the foreclosure sale was held and the winning bid was submitted by a third party bidder. The third party bidder defaulted on paying the remainder of the funds due and a Certificate of Sale was never issued.

3. On October 26, 2018, the Defendant filed a Notice of Bankruptcy Filing (see attached **Exhibit "B"**)

4. On July 12, 2019, an Order Granting Motion of Royal Hills Homeowners Association, Inc. for Relief from Stay was entered by the United States Bankruptcy Court (see attached **Exhibit "C"**).


EXHIBIT B

6791832.DOC

5. To date, Plaintiff has not been paid the amount set out in the Amended Final Judgment of Foreclosure, therefore, the October 26, 2018 foreclosure sale should be rescheduled.

6. **The filing of a bankruptcy petition by the Debtor or any person or entity filing or claiming an interest by through or under the debtor prior to July 2, 2021, will not cause the automatic stay to become operative and will not, therefore, provide grounds to stop any scheduled foreclosure sale or other Court proceeding with respect to the property described below.**

> Lot 3, Block 30, RIVERHILLS COUNTRY CLUB, Parcel 19, according to the map or plat thereof, as recorded in Plat Book 82, Page 36, of the Public Records of Hillsborough County, Florida.

WHEREFORE, Plaintiff, RHC MASTER ASSOCIATION, INC., respectfully requests that the Court order the Clerk to reset the sale in the instant action, and for any other and further relief the Court deems just and proper.

Michelle T. Reiss, Esquire
Fla. Bar No. 36993
mreiss@appletonreiss.com
Appleton Reiss, PLLC
501 E. Kennedy Blvd., Suite 802
Tampa, FL 33602
(813) 542-8888
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by U.S. Mail to: Brian M. Grafton and Sylvia Grafton, 5842 Bent Grass Drive, Valrico, FL 33596, on this 24 day of July, 2019.

Attorney

6791832.DOC



MARIA S. CHAPMAN, ESQ.
501 E Kennedy Blvd., Suite 802, Tampa, FL 33602
Office: 813.542.8888 | Direct: 813.542.6129
appletonreiss.com | mchapman@appletonreiss.com

September 19, 2019

**VIA CERTIFIED MAIL, RETURN
RECEIPT REQUESTED AND
REGULAR U.S. MAIL**

Brian M. Grafton
Sylvia Grafton
5842 Bent Grass Dr
Valrico, FL 33596-9244

  RE: Violation of the Amended Declaration of Maintenance Covenants for RHC
     Master Association, Inc.
     Property Address: 5842 Bent Grass Dr, Valrico, FL 33596-9244
     File No.: 3.109

Dear Brian M. Grafton and Sylvia Grafton:

  The alleged aggrieved party, RHC Master Association, Inc. (the "**Association**"), hereby demands that Brian M. Grafton and Sylvia Grafton, as the responding parties, engage in mandatory pre-suit mediation in connection with the following dispute, which by statute is of a type that is subject to pre-suit mediation.

  The property at 5842 Bent Grass Dr, Valrico, FL 33596-9244 (the "**Property**"), is in violation of the Amended Declaration of Maintenance Covenants for RHC Master Association, Inc. (the "**Declaration**") and/or the RHC Master Association, Inc. Rules & Regulations (the "**Rules and Regulations**"). Specifically, it is alleged that your roof, driveway, and sidewalk have become discolored. As such, the roof, driveway and sidewalk require cleaning and/or pressure washing. The sidewalks on your lot are also uneven, creating a dangerous tripping hazard, and they need to be repaired. The foregoing violate Article VI, Sections 1 and 3 of the Home Owners' Declaration and the Maintenance Declaration, as amended, which state in pertinent part as follows:

    SECTION 1. EXTERIORS OF HOMES. Each owner shall maintain all structures and improvements (including the home) located on his Lot in a neat, orderly and attractive manner and consistent with the general appearance of River Hills Country Club as a whole. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of River Hills Country Club as initially constructed and otherwise improved by Developer or by any other builders, taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Review Committee (the "ARC"). Each owner shall repaint or restain, as appropriate, the exterior portions of his home (with the same colors



EXHIBIT C



> as initially used on the house, unless otherwise approved be the ARC) as often as is necessary to comply with the foregoing standards.
>
> ....
>
> Section 3. REMEDIES FOR NONCOMPLIANCE. In the event of the failure of an Owner to maintain his Lot or structures thereon in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon Owner's Lot and perform such work as is necessary to bring the Lot or Unit, as applicable, into compliance with the standards set forth in this article. Such work may include, but shall not necessarily be limited to, the cutting/trimming of grass, trees and shrubs; the removal (by spraying or otherwise) of weeds and other vegetation; the resodding or replanting of grass, trees or shrubs; the repainting or restaining of exterior surfaces of a home; the repair of walls, fences, roofs, doors, windows and other portions of a Unit or other structures on a Lot; and such other remedial work as is judged necessary by the applicable entity. The remedies provided for herein shall be cumulative and all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

It is also alleged that there are dead palm fronds on your property. In addition, your lawn has dead, bare spots and/or areas full of weeds, and as a result the sod in these areas requires replacement. The foregoing violate Article VI, Sections 2 and 3, and Article IX, Section 8 of the Home Owners' Declaration and the Maintenance Declaration, as amended, which provide as follows:

> Section 2. LOTS. Each Owner shall maintain the trees, shrubbery, grass and other landscaping on his Lot in a neat, orderly and attractive manner and consistent with the general appearance of River Hills Country Club as a whole. The minimum (though not sole) standard for the foregoing shall be the general appearance of River Hills Country Club as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of the applicable landscaping, as properly trimmed and maintained). The foregoing maintenance obligations shall also apply to the land and improvements, if any, between the boundary line of a Lot and the edge of the pavement of any roadway it abuts.
>
> Section 3. REMEDIES FOR NONCOMPLIANCE. In the event of the failure of an Owner to maintain his Lot or structures



thereon in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon Owner's Lot and perform such work as is necessary to bring the Lot or Unit, as applicable, into compliance with the standards set forth in this article. Such work may include, but shall not necessarily be limited to, the cutting/trimming of grass, trees and shrubs; the removal (by spraying or otherwise) of weeds and other vegetation; the resodding or replanting of grass, trees or shrubs; the repainting or restaining of exterior surfaces of a home; the repair of walls, fences, roofs, doors, windows and other portions of a Unit or other structures on a Lot; and such other remedial work as is judged necessary by the applicable entity. The remedies provided for herein shall be cumulative and all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

Article IX, Section 8 of the Home Owners' Declaration and the Maintenance Declaration, as amended, states as follows:

Section 8. SITE APPEARANCE. No weeds, underbrush or other unsightly vegetation shall be permitted to grow or remain upon any Lot, and no refuse pile or unsightly objects shall be allowed to be placed or suffered to remain anywhere thereon; and in the event that any Owner shall fail or refuse to keep his Lot free of weeds, underbrush or refuse piles, debris or other unsightly growths or objects, then the Association may enter upon said Lot and remove the same at the expense of the Owner, and such entry shall not be deemed a trespass...

Pursuant to section 720.311, *Florida Statutes*, this demand to resolve the dispute through pre-suit mediation is required before a lawsuit can be filed concerning the dispute. Pursuant to the statute, the parties are required to engage in pre-suit mediation with a neutral third-party mediator in order to attempt to resolve this dispute without court action, and the aggrieved party demands that you likewise agree to this process. If you fail to participate in the mediation process, suit may be brought against you without further warning.

The process of mediation involves a supervised negotiation process in which a trained, neutral third-party mediator meets with both parties and assists them in exploring possible opportunities for resolving part or all of the dispute. By agreeing to participate in pre-suit mediation, you are not bound in any way to change your position. Furthermore, the mediator has no authority to make any decisions in this matter or to determine who is right or wrong and merely acts as a facilitator to ensure that each party understands the position of the other party and that all options for reasonable settlement are fully explored.



If an agreement is reached, it shall be reduced to writing and becomes a binding and enforceable commitment of the parties. A resolution of one or more disputes in this fashion avoids the need to litigate these issues in court. The failure to reach an agreement, or the failure of a party to participate in the process, results in the mediator declaring an impasse in the mediation, after which the aggrieved party may proceed to court on all outstanding, unsettled disputes. If you have failed or refused to participate in the entire mediation process, you will not be entitled to recover attorney's fees, even if you prevail.

The aggrieved party has selected and hereby lists five certified mediators who we believe to be neutral and qualified to mediate the dispute. You have the right to select any one of these mediators. The fact that one party may be familiar with one or more of the listed mediators does not mean that the mediator cannot act as a neutral and impartial facilitator. Any mediator who cannot act in this capacity is required ethically to decline to accept engagement. The mediators who we suggest, and their current hourly rates, are as follows:

- James R. Betts
  Phone #: (813) 254 - 3302
  Hourly Rate: $360.00 per hour (2 parties)

- Charles A. Buford
  Phone #: (727) 461-1818
  Hourly Rate: $300.00 per hour (2 parties)

- Charles Nelson Castagna
  Phone #: (727) 446 - 4221
  Hourly Rate: $350.00 per hour (2 parties)

- Herbert E. Langford
  Phone #: (727) 725-8774
  Hourly Rate: $300.00 per hour (2 parties)

- Rod B. Neuman
  Phone #: (813) 877-9290
  Hourly Rate: $275.00 per hour (2 parties)

Enclosed is additional information regarding the above mediators. In addition, you may contact the offices of these mediators to confirm that the listed mediators will be neutral and will not show any favoritism toward either party. The Florida Supreme Court can provide you a list of other certified mediators.

Unless otherwise agreed by the parties, section 720.311(2)(b), *Florida Statutes*, requires that the parties share the costs of pre-suit mediation equally, including the fee charged by the mediator. An average mediation may require three to four hours of the mediator's time, including some preparation time, and the parties would need to share equally the mediator's fees as well as their own attorney's fees if they choose to employ an attorney in connection with the mediation. However, use of an attorney is not required and is at the option of each party. The mediators may



require the advance payment of some or all of the anticipated fees. The aggrieved party hereby agrees to pay or prepay one-half of the mediator's estimated fees and to forward this amount or such other reasonable advance deposits as the mediator requires for this purpose. Any funds deposited will be returned to you if these are in excess of your share of the fees incurred.

To begin your participation in pre-suit mediation to try to resolve the dispute and avoid further legal action, please sign below and clearly indicate which mediator is acceptable to you. We will then ask the mediator to schedule a mutually convenient time and place for the mediation conference to be held. The mediation conference must be held within ninety (90) days of this date, unless extended by mutual written agreement. **In the event that you fail to respond within 20 days from the date of this letter, or if you fail to agree to at least one of the mediators that we have suggested or to pay or prepay to the mediator one-half of the costs involved, the aggrieved party will be authorized to proceed with the filing of a lawsuit against you without further notice and may seek an award of attorney's fees or costs incurred in attempting to obtain mediation.**

Therefore, please give this matter your immediate attention. Enclosed, for your convenience, is an Agreement to Mediate. By law, your response must be mailed by certified mail, return receipt requested, and by first-class mail to Attn: Maria S. Chapman, Esq., APPLETON, REISS, PLLC, 501 E. Kennedy Blvd., Ste 802, Tampa, FL 33602.

YOUR SIGNATURE ON THE ENCLOSED AGREEMENT TO MEDIATE INDICATES YOUR AGREEMENT TO THAT CHOICE.

Sincerely,

*Maria S. Chapman*
Maria S. Chapman, Esq.

MSC/nrj
Enclosures
cc:     Client